CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 8 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

ROBERT ALLEN BANE, )
**Plaintiff,** )
) Civil Action No. 7:06CV00733
)
v. ) **MEMORANDUM OPINION**
)
VIRGINIA DEPARTMENT OF )
CORRECTIONS, et al., )
**Defendants.** ) By: Hon. James C. Turk
) Senior United States District Judge

Plaintiff, Robert Allen Bane ("Bane"), a Virginia inmate proceeding pro se, brings this action

under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, with

jurisdiction vested under 28 U.S.C. § 1343, and under the Americans with Disabilities Act, 42

U.S.C. § 12101 et seq. (2005) ("ADA"), and the Rehabilitation Act of 1973 § 504, 29 U.S.C. § 701

et seq. (1998 & Supp. 2006) ("RA"), with jurisdiction vested under 28 U.S.C. § 1331. Bane sues

the Virginia Department of Corrections ("VDOC"), Augusta Correctional Center ("Augusta"), L.J.

Huestis, Augusta Head Nurse, and Major Fleming, Augusta Chief of Security.[1] Plaintiff

simultaneously filed his Complaint and a Motion for Summary Judgment in which he complains that

Augusta staff improperly changed his disability code from "D" to "F" which resulted in his transfer

from Augusta to Sussex II State Prison ("Sussex II"), which is a higher level security facility with

fewer privileges than Augusta. Bane specifically alleges that Augusta (1) forced him to accept

unwanted disability accommodations by transferring him to another facility in violation of 28 CFR

§ 35.130(e)(1); (2) refused to accommodate his need for auxiliary aides by confiscating his Canadian

---

[1] As a threshold matter, the state (VDOC and Augusta) and defendants acting in their official capacities are not "persons" and, therefore, are not proper defendants in a § 1983 action. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). They are, however, proper defendants under the ADA and the RA.

1

crutch and second arm sling; (3) denied him privileges based solely on his disability by transferring him to a higher level security facility; (4) retaliated against him for filing grievances by transferring him to a higher level security facility; (5) selectively enforced an unlawful policy to transfer disabled inmates without regard to their actual abilities; and (6) failed to recognize the right of inmates to refuse unwanted disability accommodations. Bane also alleges that Huestis (7) violated his First Amendment rights; (8) retaliated against him for filing grievances against her by transferring him to a higher level security facility; (9) was deliberately indifferent to a serious medical need by refusing to return Bane's auxiliary aids; and (10) that Major Fleming was deliberately indifferent to a serious medical need by refusing to return Bane's auxiliary aids. Bane seeks both monetary and injunctive relief.[2] The Defendants have also filed a Motion for Summary Judgment. The court notified Plaintiff of Defendants' motion as required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and warned Plaintiff that judgment might be granted for the Defendants if he did not respond to the motion by filing affidavits or other documents contradicting the Defendants' evidence or otherwise explaining his claims. Plaintiff responded, making the motions ripe for the court's consideration. Upon review of the record, the court concludes that Defendants' Motion for Summary Judgment must be granted, and Plaintiff's motions must be denied.

## I. Plaintiff's Allegations

Bane is an inmate currently housed at Sussex II State Prison. Bane suffers from extensive nerve damage in his right shoulder and lower leg (resulting in a condition known as "drop foot") and

---

[2] Bane requests nominal damages in the amount of $1.00, punitive damages in the amount of $100,000, transfer back to Augusta, and the return of his Canadian crutch and second arm sling. He also requests an order requiring Augusta to amend Internal Operating Procedure (hereinafter "IOP") 824, cease "excluding disabled inmates," and recognize that disabled inmates have a right to refuse to accept unwanted disability accommodations.

2

joint disease in his knees and hips. Bane alleges that, during the 8 1/2 years he served at Augusta, he functioned very well without any structural accommodations of any kind. Bane's security level score during this time was three (3) out of a possible highest score of six (6), and his original disability location code was "D," on a scale in which the most severe level is "G." However, Bane alleges that the Augusta staff improperly changed his disability code from "D" to "F" which resulted in his transfer to Sussex II, a security level four (4) facility with fewer privileges than Augusta. Bane filed several grievances concerning this matter and he was eventually approved by the VDOC Director of Health Services to return to Augusta.

Bane contends that when he returned to Augusta on June 9, 2006, his second arm sling and Canadian crutch were confiscated. On June 19, 2006, he alleges that the Augusta treating physician ordered the sling and crutch to be returned; however, Bane claims that Nurse Huestis refused to comply with this order. Bane further alleges that Nurse Huestis recommended to the physician that Bane's disability code should be changed to "F" in order to transfer him back to Sussex II, and that when Bane showed her the grievance that led to his transfer back to Augusta her response was, "Well, we'll fix that." (Pl.'s Mot. Summ. J. 4). Bane filed two informal complaints on June 21, 2006, concerning Nurse Huestis's refusal to return the sling and crutch. Bane alleges that when Nurse Huestis received his complaints, she then "took it upon herself" to change Bane's disability code to "F" which resulted in his transfer back to Sussex II six (6) days later. Id. Upon Bane's return to Sussex II, the treating physician changed his disability code back to "D," but Bane alleges that the VDOC refuses to transfer him back to Augusta. Bane finally alleges that the VDOC failed to allow him to refuse the disability accommodations at Sussex II and that Augusta continues to refuse to return his Canadian crutch and second arm sling.

3

## II. Defendants' Evidence

In their Motion for Summary Judgment and Response to Order, the Defendants included copies of Bane's medical records related to the re-evaluation of his medical classification in January 2007 as well as several affidavits from the treating medical staff at Augusta and Sussex II. The government explains that the VDOC uses location assignment codes for inmates with disabilities, depending on the severity of the disability or disease.[3] The assessment of each inmate is conducted by health care personnel and the VDOC Office of Health Services ("OHS") coordinates any required transfers. The medical staff at each facility has the authority and discretion to assess an inmate and update his medical location code based on his medical needs at the time of the assessment. According to policy, Augusta is not designated to house inmates who require special accommodations.

The government further explains that all inmates enjoy privileges based upon the security designation of each facility. Level 3 and 4 prisons offer similar privileges with some differences in yard activity schedules, out of cell time, commissary spend limits, visiting access, personal clothing allowances, work assignments, and programming. For example, an inmate at Sussex II, a Level 4 prison, receives a minimum of eight (8) hours of out of cell time/recreation per day while an inmate at Augusta, a Level 3 prison, receives a minimum of ten (10) hours of out of cell time/recreation per day. The government indicates that Lawrenceville Correctional Center ("LCC") is the only VDOC facility that houses Level 3 inmates whose medical conditions require a flat surface. However, due

---

[3] A location code of "A," "B," or "C" denotes that an inmate requires no special accommodations for activities, programs, or services. A location code of "D" denotes that no major structural accommodations are necessary and the inmate's mobility is not substantially limited. A location code of "E" or "F" reflects that some structural or environmental accommodations are required because the inmate may have substantial limitations or stamina.

4

to a contract with the private vendor of the facility, Bane does not meet the criteria for placement at LCC due to his multiple life sentences, which include convictions for murder, burglary, and the use of a firearm.

VDOC records reflect that Bane was assigned to location code "D" until 2004. In 2004, the Augusta medical staff assessed Bane's medical requirements and determined that his medical conditions required a flat facility. Bane's medical code was changed to "F" and he was transferred to Greensville Correctional Center ("Greensville") on July 16, 2004. The physician at Greensville reviewed Bane's medical needs and determined that, based on his medical and mental health requirements, a more suitable assignment was Sussex II. Bane arrived at Sussex II on August 10, 2004, and he remained there until he was transferred back to Augusta on June 9, 2006.[4]

On June 19, 2006, Bane was seen by the Augusta physician who noted in Bane's medical records that Bane was wearing a sling and using a wooden cane. The physician also noted that Bane suffered from chronic myalgia, shoulder atrophy, and chronic problems in his lower extremities. The physician recommended a bottom bunk, on a bottom floor, and a smoke free cell if available. He also noted that a Canadian crutch and a second arm sling could be issued if available. Records also reveal that Bane inquired about a diagnosis for increasing pain in joints, knees, hips, and a decreased sensation and very little feeling in both feet. Bane further complained of blisters from the state-issued boots and weakness in both ankles.

Upon further review of Bane's medical requirements, Nurse Huestis alleges that she

---

[4] This transfer back to Augusta was due to a grievance Bane filed concerning his medical location code which was determined to be founded. Bane appealed Central Classification Services' ("CCS") decision to disapprove his request for assignment at Augusta and the Chief of Operations of Offender Management Services ("OMS") stated that, as the Sussex II medical staff determined that stairs would not be a problem for Bane, Bane was to remain classified as a "D" medical location and that he would be transferred to one of three assignments, including Augusta, as soon as a bed became available.

5

determined that Augusta was not a suitable institutional assignment for Bane as Augusta is a tiered institution with many stairs and general population inmates are required to walk to the dining hall for meals. On June 22, 2006, Huestis contacted the VDOC OHS to discuss her recommendation to change Bane's location code from "D" to "F." The clinical coordinator agreed with the assessment of Bane's medical requirements and determined that a transfer to a facility without hills, steps, or barriers in housing and other critical areas would be best. The transfer back to Sussex II on June 28, 2006, was coordinated by the OHS.

Dr. Ulep, Sussex II Medical Director, states that he reviewed Bane's medical records and reordered all of his medication on June 29, 2006. Ulep met with Bane again on July 11, 2006, and alleges that he changed Bane's code back to "D" based on his medical conditions. Ulep indicates that on January 31, 2007, he received a telephone inquiry from Doctor Harvard Stephens, VDOC Medical Director. The discussion centered around Bane's medical location code and when Dr. Stephens asked whether Bane would have difficulty walking on unlevel or uneven terrain and climbing hills, Dr. Ulep answered in the affirmative. Ulep alleges that, based on this consultation with Dr. Stephens and a re-evaluation of Bane's medical requirements, he changed Bane's medical code back to "F." Medical records from that date reveal that, in response to Bane's protest as to his code change, Dr. Ulep wrote, "Augusta couldn't deal with your special devices so DOC 'requested' me to reclassify you back to F, so they don't send you back there." (Ulep Aff. Ex. 6 at 9).

The government contends that, as a result of this lawsuit, the VDOC reviewed Bane's medical location code, security classification and good time earning level as if he had been newly received by the VDOC. Upon review by the institutional physician at Sussex II, and with the approval of the VDOC's chief medical authority, they determined that the most suitable medical

location code for Bane is "F." The government argues that Augusta is not a feasible housing assignment for Bane and, based on his medical need for a facility without hills or structural barriers, Sussex II is the most suitable facility for Bane. The government also points out that even if his medical location remained "D," Bane is still not entitled to a housing assignment at Augusta. As long as his medical requirements are met, Bane can be housed at any location designated by correctional staff in consultation with medical staff.

### III. Exhaustion of Administrative Remedies

The Defendants argue that claims (2), (3), (9), and (10) should be dismissed because Bane failed to exhaust his administrative remedies as to those claims as required by the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 101, 110 Stat. 1321-66 (codified as amended at 42 U.S.C. § 1997e et seq. ("PLRA").[5] § 1997e(a) requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006); Porter v. Nussle, 534 U.S. 516, 524 (2002). Administrative law requires proper exhaustion of all available administrative remedies, which means using all steps that the agency holds out, and doing so properly. See Woodford, 125 S. Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Moreover, a prisoner is not excused from the exhaustion requirement where the administrative process does not afford the relief sought by the prisoner. Booth v. Churner, 532 U.S.

---

[5] Bane's relevant claims are (2) that Augusta refused to accommodate his need for auxiliary aides by confiscating his Canadian crutch and second arm sling and refusing to return them; (3) that Augusta denied him participation in the Level 3 privilege program based solely on his disability by transferring him to a higher level security facility; (9) that Nurse Heustis was deliberately indifferent to a serious medical need by refusing to return Bane's auxiliary aids; and (10) that Major Fleming was deliberately indifferent to a serious medical need by refusing to allow Nurse Huestis to return Bane's auxiliary aids.

731, 741 (2001). Non-exhaustion is an affirmative defense that the Defendants must raise and prove. Jones v. Bock, 127 S. Ct. 910, 921 (2007); Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Bane, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in accordance with the grievance procedures established by the VDOC. See Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004). In particular, he must comply with Division Operating Procedure ("DOP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. DOP 866-7.13 requires that, prior to submitting a formal grievance, the inmate should demonstrate that he has made a good faith attempt to informally resolve the complaint. According to the affidavit of S. Conner, Augusta Institutional Ombudsman, this can be accomplished under Augusta policy by submitting an informal complaint form ("ICF") to the appropriate department head. Prison officials must respond in writing to the inmate's informal complaint within fifteen (15) days of receiving the complaint. DOP 866-7.13. Responses must be made in writing with the reasons for the response stated clearly. Id. Once an informal resolution has been attempted, a formal (regular) grievance may be filed within thirty (30) calendar days from the date of the occurrence/incident. DOP 866-7.14. If the grievance meets the criteria for acceptance, it is logged in and a receipt is issued to the inmate. Only one issue per grievance is considered. Id. If an inmate wishes a review of any grievance decision, he may send the grievance form within five (5) calendar days to the Regional Ombudsman for a determination. Id.

Bane alleges in a March 21, 2007 Affidavit that he filed an ICF concerning his "denial of Level 3 privileges" on July 13, 2006. Bane does not indicate whether the grievance was directed to Augusta or Sussex II. Therefore, the court will make the assumption that Bane's alleged filing

8

occurred in the Sussex II system since that is where he was being housed on that date. He alleges that the complaint was answered on July 25, 2006 and that he filed a regular grievance that same day. Bane claims that the grievance was never answered and was never assigned a log number, but Bane fails to provide any documentation of the ICF or the regular grievance. S. Massenburg, Sussex II Institutional Ombudsman, states that Bane has not exhausted his administrative remedies as to this issue as Bane has filed five (5) regular grievances since his return to Sussex II in June of 2006, and none of the grievances concerned outdoor recreation or other privileges.

On September 29, 2006, while housed at Sussex II, Bane sent an ICF to Augusta claiming that his crutch had been confiscated at Augusta and had not been sent to Sussex II from Augusta. He did not mention a second arm sling in his complaint. On October 5, 2006, Bane was advised that Augusta never received his crutch when he was transferred to Augusta from Sussex II in June of 2006, and that Bane would need to address this issue with the appropriate officials at Sussex II. It was also pointed out that, as Bane had transferred from Augusta on June 28, 2006, the thirty (30) day period in which to file a grievance regarding issues at Augusta had expired. Bane does not claim that he submitted a formal grievance concerning this issue. S. Conner, Augusta Institutional Ombudsman, affirms that Augusta's grievance records indicate that Bane has not exhausted his administrative remedies as to this issue as he has not submitted any regular grievances concerning the Canadian crutch and second arm sling.

In the instant action, Bane has failed to fully exhaust the grievance procedures available to him concerning his Level 3 privileges as well as those concerning Augusta's alleged failure to return his Canadian crutch and second arm sling. It is apparent that Bane put some effort into resolving his claims; however, the court finds that he did not properly exhaust all of his available administrative

9

remedies as required by 42 U.S.C. § 1997e. Bane failed to file his September 29, 2006 grievance concerning his Canadian crutch within the thirty (30) calendar days from the date of the occurrence/incident and prison records reveal that he failed to properly file formal grievances or appeals as to either claim (2) or (3) as required by DOP 866-7.14. The court acknowledges that Bane presents evidence concerning his "Level 3 privileges" grievances that is inconsistent with the evidence provided by the government, but Bane's affidavit fails to describe the proceedings with adequate specificity and is insufficient to rebut the government's evidence. See Allsbrook v. Terrangi, 117 Fed. Appx. 309 (4th Cir. 2005) (unpublished) (affirming the district court's dismissal without prejudice of a prisoner's claims for failure to exhaust administrative remedies when the prisoner provided the district court with no documentation proving that he pursued a formal grievance or his available appeals). Therefore, the court dismisses claims (2) and (3) of Bane's Complaint without prejudice under 42 U.S.C. § 1997e(a).[6]

The government contends that claims (9) and (10) should also be dismissed for failure to exhaust administrative remedies. The court finds a question of fact as to whether Bane exhausted these claims, however. On June 21, 2006, records reveal that, while housed at Augusta, Bane filed two separate ICFs claiming entitlement to (1) a secondary arm sling and (2) a Canadian crutch. Bane alleged in both ICFs that the nurse refused to issue the sling and crutch to him because security would not allow her to issue either item. Bane claims in a March 21, 2007 Affidavit that he filed a formal grievance concerning these issues on June 27, 2006, but that it was rejected because he

---

[6] Regardless, as to claim (3), the court does not consider the security levels of the prison system to be "programs" as defined in the ADA or RA. Therefore, Bane fails to state a claim under either statute. Claim (2) also fails on the merits as discussed in succeeding paragraphs.

10

allegedly raised more than one issue in the complaint. Bane claims that he appealed to the Regional Ombudsman on July 1, 2006, but that his appeal was rejected because he allegedly failed to file within five (5) days and that this grievance was not assigned a log number. Bane fails to provide any copies of the formal grievance or appeal, but he does specifically allege in a March 5, 2007 affidavit that he did not raise more than one issue in his formal grievance and that each filing was made in a timely manner. Accordingly, the court will assume without deciding that Bane has exhausted his administrative remedies as to claims (9) and (10).

## IV. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Yet, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Id. Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the nonmoving party. Anderson, 477 U.S. at 247-48.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the nonmoving party may not rest on the mere conclusory

11

allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Id. Ordinarily, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings in order to withstand a motion for summary judgment by the defendants that is supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, however, the court need not treat the complaint's legal conclusions at true. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (holding that the court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

### V. Analysis

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

#### A. Deliberate Indifference Claims

Bane alleges in claims (9) and (10) that the staff at Augusta were deliberately indifferent to

12

a serious medical need by confiscating his second arm sling and Canadian crutch and refusing to return them. Bane's claims fail on the merits as they are inconsistent with his medical records. The Augusta treating physician's notes indicate that Bane arrived at Augusta on June 9, 2006, with only one arm sling and a wooden cane. The physician noted that a second arm sling and a Canadian crutch *could be* issued *if available* but does not require either. (Pl. Mot. Summ. J., Ex. 3 to Attach. 1). Further, even if the staff at Augusta confiscated Bane's second arm sling and Canadian crutch before he was presented to the treating physician, the physician's notes make it clear that Bane's preference for those two particular auxiliary aids does not constitute a "serious medical need" under Estelle v. Gamble, 429 U.S. 97, 104 (1976). The physician did not determine that Bane had a sufficiently serious need for the auxiliary aids but merely recommended that a second arm sling and Canadian crutch could be issued if available. See Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995). Accordingly, the court finds that Bane has not stated a cognizable Eighth Amendment claim regarding medical treatment and will grant Defendants' Motion for Summary Judgment as to claims (9) and (10).

### B. Retaliation Claims

Bane claims that Augusta (4) retaliated against him for filing several grievances by transferring him to a higher level security facility. Bane also claims that Nurse Huestis (7) violated his First Amendment rights by unlawfully denying him the remedy provided by a founded grievance and (8) retaliated against him for filing grievances against her by transferring him to a higher level security facility. The government argues that Bane has produced inadequate evidence of retaliation as Huestis did not coordinate the transfer, nor did she decide to which institution Bane would be transferred. The government also contends that Bane's medical location code was not changed from

13

"D" to "F" as a result of the many general grievances that he filed or of the grievances he filed against Huestis, but because of his medical needs.

## 1. § 1983 Claims

Retaliation against an inmate for the exercise of a constitutionally protected right states a § 1983 claim. Garrett v. Angelone, 940 F.Supp. 933, 944 (W.D. Va. 1996) (citing American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 786 (4th Cir. 1993); Hudspeth v. Figgins, 584 F.2d 1345 (4th Cir. 1978); Russell v. Oliver, 552 F.2d 115 (4th Cir. 1977). In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, the inmate must allege sufficient facts which tend to support his allegation of a retaliatory motive behind defendants' actions. White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams, 40 F.3d at 75.

Bane's complaints fail as to both Augusta and Huestis because the alleged retaliatory act of transferring him to Sussex II was not in response to the exercise of a constitutional right and did not violate a constitutional right. Specifically, Bane has failed to allege sufficient facts which suggest that his placement at Sussex II violated the First Amendment. As there is no constitutional right to participate in grievance proceedings, Bane is barred from claiming that the transfer was made in retaliation to the exercise of a constitutionally protected right.[7] Adams v. Rice, 40 F.3d 72, 75

---

[7] Bane's claim (7) that Huestis violated his First Amendment right by allegedly not returning his second arm sling and Canadian crutch in response to a grievance he filed also fails for this reason. Since there is no constitutional right to the grievance process, Huestis did not violate the First Amendment by allegedly refusing to respond to Bane's grievance.

14

(4th Cir. 1994) (finding that the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state); <u>Minor v. Ritchie County Courts</u>, No. 5:06CV102, 2007 WL 709318 (N.D.W. Va. March 5, 2007). In addition, the government provides a legitimate non-retaliatory reason for Bane's transfer. Accordingly, the court finds that Bane's allegations fail to state any retaliation claim cognizable under § 1983 and the court will grant Defendants' Motion for Summary Judgment as to claims (4), (7), and (8).

Bane also seems to be alleging that he has a constitutional right against unwanted transfers in general, and that his transfer back to Sussex II violated this right. However, an inmate has no constitutional right to be housed in any particular prison, and prison officials have broad discretion to determine the facility at which an inmate is housed. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976) (holding that the Due Process Clause, in and of itself, does not protect a duly convicted prisoner against transfer from one institution to another and that a valid conviction empowers the State to confine an inmate in any of its prisons); <u>Khaliq v. Angelone</u>, No. 02-7365, 2003 WL 21689152 (4th Cir. 2003). <u>Robinson v. Braxton</u>, No. 7:07CV00054, 2007 WL 528786 (W.D. Va. Feb. 15, 2007); <u>see also</u> <u>Montayne v. Haymes</u>, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); 16C C.J.S. <u>Constitutional Law</u> § 1679 (2007) (pointing out that an inmate does not have a constitutional right to a particular custody classification, and a transfer to a more secure facility does not by itself implicate a protected liberty interest entitled to due process protection even though the conditions of confinement are more burdensome).

However, a state itself may create a liberty interest which is protected by due process. <u>See</u>

15

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (recognizing that States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause but holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on an inmate in relation to ordinary incidents of prison life); *see also, Wilkinson v. Austin*, 545 U.S. 209, 125 (2005) (holding that, despite general rule that an interprison transfer does not implicate the Due Process Clause, transfer to a so-called "Supermax" facility at which a prisoner would experience exceptionally more onerous conditions did implicate the Due Process Clause). Under Virginia's prison regulations, transfers for various reasons are routine. Thus, transfers under these regulations do not pose atypical hardship on inmates and so create no liberty interest entitled to protection under the Due Process Clause. *See Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (holding that the VDOC's interstate transfer regulations are routine and create no liberty interest in any transfer); *Waters v. Bass*, 304 F.Supp.2d 802, 805 (E.D. Va. 2004) (holding that Virginia's prison transfer regulations do not create any liberty interest in a specific housing assignment, as prison officials have, and reasonably must have, broad discretion under the regulations to determine the facility at which an inmate is housed). Bane was not held in and has not been transferred to a "Supermax" facility, and as he does not have a liberty interest in a particular classification or in being incarcerated in any particular facility, the court finds that he has not stated a Due Process claim related to his transfers.

## 2. ADA and RA Claims

To the extent that Bane may be claiming retaliation by the Defendants for requesting an accommodation under Title II of the ADA or § 504 of the Rehabilitation Act, the court notes that retaliation against persons who make complaints under Title II or § 504 is actionable and applicable

16

to inmates in state prisons  See 42 U.S.C.A. § 12203; 28 C.F.R. § 35.134(a)[8]; 29 U.S.C.

§§ 794a(a)(2), 794(d); 45 C.F.R. §§ 84.61, 80.7(e)[9]; Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S.

206 (1998) (ADA); Clarkson v. Coughlin, 898 F. Supp. 1019 (S.D.N.Y. 1995) (RA).  Congress has

dictated that Title II of the ADA be interpreted in a manner consistent with § 504 of the RA.  See

42 U.S.C. §§ 12134(b), 12201(a).  Thus, because the purpose, scope, and governing standards of the

"'[A]cts are largely the same, cases construing one statute are instructive in construing the other.'"

McPherson v. MHSAA, 119 F.3d 453, 460 (6th Cir. 1997) (en banc) (quoting Andrews v. State of

Ohio, 104 F.3d 803, 807 (6th Cir. 1997)); Doe v. Univ. of Maryland Med. Sys. Corp., 50 F.3d 1261,

1265 (4th Cir. 1995) (noting that because the language and purposes of the Acts are substantially the

same, a common analysis applies to claims under the ADA and RA).

Federal regulations prohibit retaliation against any person for the exercise of rights pursuant

to the ADA and the RA.  See Hoyt v. St. Mary's Rehabilitation Center, 711 F.2d 864, 867 (8th Cir.

1983) (recognizing cause of action for retaliation under § 504 of the RA).  To state a prima facie case

of retaliation in violation of the RA or ADA, a plaintiff must demonstrate (1) that he engaged in

activity protected under the Act, (2) that he suffered an adverse governmental action after or at the

same time as such protected activity, and (3) that the exercise of the protected activity was the cause

of the adverse governmental action.  Bennett v. Henderson, 15 F. Supp. 2d 1097, 1112 (D. Kansas

1998).

---

[8]  This section provides: "No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part."

[9]  This section provides: "Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part."

17

Assuming without deciding that Bane's grievance filing constitutes a protected activity under the Act, Bane still fails to demonstrate that he suffered an adverse governmental action. In fact, the record indicates that Bane is now currently housed at an institution better situated to accommodate his medical needs. Sussex II is a single-tiered institution and Augusta is a many-tiered institution replete with steps and hills as barriers to required activities such as meals. At most, Bane is alleging that his transfer from Augusta was undesirable, but his preference for Augusta cannot factor into the court's assessment of prison officials' responsibilities under the ADA or RA and is certainly not sufficient to demonstrate an adverse governmental action. Furthermore, the record indicates that Bane was transferred based on his observed medical needs, not because he filed grievances. Accordingly, in the context of the ADA and RA, the court will again grant Defendants' Motion for Summary Judgment as to claims (4), (7), and (8).

### C. Unwanted Disability Accommodations Claims

Bane claims that (1) Augusta forced him to accept unwanted disability accommodations by transferring him to another facility in violation of 28 CFR §35.130(e)(1).[10] Similarly, Bane alleges that (6) Augusta's written policy #824 fails to recognize the right of inmates in general to refuse unwanted disability accommodations and requests that Augusta's policies be modified to comply with federal regulations. Bane further claims that (5) policy #824 is unlawful in that it dictates that all disabled inmates "will" be transferred to other facilities without regard to their actual abilities.

---

[10]  28 CFR § 35.130(e)(1) provides: "Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept." The court notes that prisoners are presumably entitled to refuse a disability accommodation under 28 C.F.R. § 35.130(e)(1). See Partelow v. Massachusetts, 442 F. Supp. 2d 41, 49 n. 13 (D. Mass. 2006).

18

He alleges that this policy is selectively enforced against inmates who file grievances.[11]

Bane's allegations fall within the scope of Title II of the ADA[12] and § 504 of the Rehabilitation Act.[13] To make out a prima facie case under the RA, the plaintiff must prove (1) that he is a "handicapped person" under the Act; (2) that he is "otherwise qualified"[14]; (3) that he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his handicap; and (4) that the program or activity receives federal funds. Burns v. City of Columbus, 91 F.3d 836, 841 (6th Cir. 1996) (internal quotation marks and citation omitted); Doe, 50 F.3d at 1264 n. 9. All but the federal-funds element is required for a prima facie case under the ADA.

Since Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998), courts have applied the mandates of the RA and the ADA to state prisons that accept federal funds. See, e.g., McIntyre v. Robinson, 126 F. Supp. 2d 394, 407-08 (D. Md. 2000); Scott v. Kelly, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000). Courts have interpreted the language of § 794 broadly, recognizing that Congress passed the RA with the purpose of eliminating discrimination against the handicapped in programs and activities receiving federal funds. See, e.g., Alexander v. Choate, 469 U.S. 287 (1985). As part of this broad interpretation, the Supreme Court has held § 504 of the Act to require "reasonable

---

[11] The court notes that it already addressed Bane's retaliation claims in a previous section of this opinion.

[12] Title II of the ADA provides, in pertinent part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

[13] The § 504 of the RA provides, in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794(a).

[14] For purposes of this opinion only, the court assumes without finding that Bane could prove that his medical conditions constitute disabilities under the ADA and the RA. See 42 U.S.C. § 12102(2).

19

accommodations" in a particular program or activity receiving federal financial assistance in order to ensure "meaningful access" to the program. Id. at 301.

On the other hand, prison officials may determine the reasonableness of the accommodation request in consideration of other penological needs in the prison setting, such as security, safety and administrative exigencies. See Gates v. Rowland, 39 F.3d 1439, 1446-47 (9th Cir. 1994) (applying the Turner v. Safely, 482 U.S. 78 (1987) rational relationship test in determining the reasonableness of accommodations requested under the ADA for HIV-positive prisoners in light of other penological concerns). Furthermore, prison officials may meet their accommodation responsibilities under the ADA and RA by transferring the inmate to another prison facility that is already equipped to offer him meaningful access to the requested benefits. Miller v. King, 384 F.3d 1248 (11th Cir. 2004). The Miller court noted that the ADA does not create any "right of transfer to a particular prison." 384 F.3d at 1267 n. 21; see also Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (holding that prisoners have no constitutional right to be incarcerated in any particular prison within a state); Va. Code Ann. § 53.1-21.

The court agrees with Defendants' contention that Bane is not refusing a disability accommodation but merely contesting where the accommodation is. It is clear from the record that Bane has requested a lower-bunk bed on a bottom-tier floor and King makes it equally as clear that the VDOC may transfer Bane to another facility in order to accommodate him. Bane argues that there are lower-bunk beds on the bottom tier available at Augusta; however, this court has already determined that, under Meachum and Olim, Bane has no right to choose where he is housed and that, regardless of the availability of beds at Augusta, the VDOC has discretion to determine at which facility Bane should be housed. See Bell v. Wolfish, 441 U.S. 520 (1979) (holding that prison

20

administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security). While the court sympathizes that Bane has been placed at a facility farther away from his family, the court may not second-guess the medical reasons for his transfer or interfere with prison officials' exercise of discretion in balancing inmate disability accommodations against other administrative concerns.

Further, this court cannot find that Augusta's policy #824 is invalid. Based on the court's limited understanding of policy #824, the court finds that generally transferring disabled inmates to facilities that are better equipped to accommodate them is certainly reasonably and rationally related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987) (finding that prison regulations which impinge on constitutional rights as they have been recognized and defined outside of the prison context may be valid if they are reasonably related to legitimate penological interests); see also Waterman v. Farmer, 183 F.3d 208, 212 (3d. Cir. 1999) (interpreting Turner to find that there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it). "[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003). Bane fails to specifically allege exactly why the policy is unconstitutional or in violation of the ADA and the RA and does not even provide the policy for the court's consideration. Thus, Bane has failed to carry his burden. Accordingly, the court will grant Defendants' Motion for Summary Judgment as to claims (1), (6), and (5)

## VI. Conclusion

Under these principles, the court concludes that Plaintiff has failed to present any genuine

Case 7:06-cv-00733-JCT-mfu   Document 25   Filed 05/08/07   Page 21 of 22   Pageid#: 303

issue of material fact in dispute and that Defendants are entitled to summary judgment as a matter of law. Therefore, for the reasons stated, Defendants' Motion for Summary Judgment will be granted and an appropriate Order issued this day. Plaintiff's Motion for Summary Judgment, Motion for Evidentiary Hearing, Motion to Expand the Record, and Motion for a Protective Order will be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to Plaintiff and to counsel of record for the Defendants.

ENTER: This 8th day of May, 2007.

Hon. James C. Turk
Senior United States District Judge

22